# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LESLEY SIMMONS ST. GERMAIN, | * | CIVIL ACTION NO. 07-9040 |
| HILLARY ROSE HILLYER, and | * | |
| MELISSA BRANIGHAN LUMINAIS | * | |
| | * | JUDGE BARBIER ("J") |
| VERSUS | * | |
| | * | |
| D. DOUGLAS HOWARD, JR., | * | MAGISTRATE ROBY ("1") |
| D. DOUGLAS HOWARD, J. & ASSOCIATES | * | |
| HOWARD & REED, ATTORNEYS AT LAW, | * | |
| and XYZ INSURANCE CO. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANTS' MEMORANDUM
## IN SUPPORT OF RULE 12(b)(6) MOTION

**MAY IT PLEASE THE COURT:**

Defendants herein, D. Douglas Howard, Jr. ("Howard"), D. Douglas Howard, Jr. &

Associates ("Howard and Associates"), and Howard & Reed, Attorneys at Law ("Howard and

Reed"), submit this memorandum praying for the dismissal of all claims.  Plaintiffs allege defendants

violated 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organizations ("RICO") act,

breached contracts with plaintiffs and committed legal malpractice.  Plaintiffs' Complaint is so

lacking in factual support of its RICO claim against defendants, that it borders on harassment, must

be dismissed with prejudice, and is sanctionable.  Further, the legal malpractice and breach of

contract claims are estopped, prescribed, and/or have no legal merit and should be dismissed with prejudice all as more fully explained below.

## **RELEVANT FACTS**

Plaintiffs are former clients of Howard, an attorney known within the community as a premiere divorce attorney who aggressively protects the interest of his clients.  Indeed, his zealousness is often the reason he is hired.  Hillyer signed a contract with Howard on November 14, 2005; he provided legal services to her until June 8, 2006.  (See Complaint, ¶¶ 26, 29).  St. Germain signed a contract on July 1, 2006, with Howard who represented her until November 21, 2006.  (See Complaint, ¶¶ 30, 33).  Luminais signed a contract on January 12, 2007.  (See Complaint, ¶¶ 34).  Although Howard achieved excellent results for all plaintiffs, they now make the ludicrous claim that his mailing of routine correspondence to them was "a pattern of racketeering," and that his representation of them amounted to legal malpractice and breach of contract.

This suit is the continuation of a vendetta against Howard by St. Germain stemming from Howard's Suit on Open Account filed against her for unpaid fees after he secured her divorce judgment.[1]  Howard obtained a default judgment after she and her current attorney, Mark Andrews, did not timely respond.  St. Germain tried to nullify the judgment but, because she had no legitimate grounds, the judgment stood and Howard collected his fees.

St. Germain then sued Howard in Civil District Court, Parish of Orleans, alleging the exact claims here but only as malpractice and breach of contract.  Howard filed a Motion to Dismiss based

---

[1]      All relevant pleadings are discussed fully in Section I..C.1.(b) *infra*, and are attached.

upon *res judicata*.  St. Germain's attorney, knowing St. Germain's claims had no merit, subsequently asked Howard if he could dismiss his Petition.  As a professional courtesy, Howard allowed him to withdraw the Petition and file a Consent Motion to Dismiss Without Prejudice which was signed on September 8, 2007.

St. Germain, in her continuing attack on Howard, filed this suit on November 20, 2007, alleging the same claims but couching them here as RICO violations that characterize Howard as a racketeer!  There is no legal support for any of the claims asserted by plaintiffs and all claims should be dismissed with prejudice.  Furthermore, such an abuse of the legal system by St. Germain should not be tolerated; this Court should impose sanctions under 28 §1927.

## LEGAL STANDARD

Rule 12(b)(6) allows for the dismissal of a claim if a plaintiff fails to state a claim upon which relief can be granted. Fed. Rules Civ. Proc. 12(b)(1).  When determining whether the dismissal of a claim is warranted, the court accepts all allegations contained in plaintiffs' Complaint as true. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied sub nom.*, 459 U.S. 1105, 103 S.Ct. 729 (1983).  However, conclusory allegations and unwarranted deductions of fact will not suffice to prevent a motion to dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Furthermore, when deciding a Motion to Dismiss, the court is allowed to consider matters of which judicial notice may be taken. *U.S. ex. rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375 (5th Cir. June 26, 2003), citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-1018 (5th Cir. 1996).

In addition, because plaintiffs have alleged a RICO claim, they have a heightened pleading requirement. *Gerstenfeld v. Nitsberg*,190 F.R.D. 127, 133 (S.D.N.Y. 1999). This heightened standard is required because a RICO claim is an unusually potent weapon - "the litigation equivalent of a thermonuclear device" - that, if not closely examined at the pleadings stage, can create intense pressure to settle regardless of its merit. *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F.Supp. 2d 444, 449 (S.D.N.Y. 2007) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997). The consequences to anyone of being accused of racketeering are dire as plaintiffs' counsel knows. As courts have long recognized, the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants. *See Carousel Foods of AM., Inc. v. Abrams & Co., Inc.*, 423 F.Supp. 2d 119, 123 (S.D.N.Y. 2006). Thus, district courts should strive to flush out frivolous RICO allegations at an early stage in the litigation. *At The Airport v. ISATA, LLC*, 438 F.Supp. 2d 55, 61 (E.D.N.Y. 2006). This RICO pleading is so meritless and malicious, it appears that its true intent is to impugn the reputation of an excellent attorney. Such abuse of the legal system warrants sanctions and the claims should be dismissed with prejudice.

## LEGAL ARGUMENT

### I.   Plaintiffs' RICO Claims Are Totally Baseless

Plaintiffs claim that all defendants violated 18 &U.S.C. §1962(c) which states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Reduced to its three essentials, a civil RICO claim must involve: (1) a *person* who engages in (2) a *pattern of racketeering activity* ; (3) connected to the acquisition, establishment, conduct, or control of an enterprise (Emphasis added). *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453 (5th Cir. 1991), citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d at 241, 242 (5th Cir. 1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531 (1989).

The gist of plaintiffs' specious complaint is that defendants engaged in "organized crime" through Howard's law firms/associations by allegedly overbilling for services rendered to plaintiffs, performing unauthorized actions, requiring advances from clients, and withdrawing from the representation of two plaintiffs consistent with the terms of their contracts.  Plaintiffs' RICO claim must be dismissed because (1) plaintiffs do not define a RICO enterprise, (2) defendants cannot be both the actors and a RICO "enterprise," (3) plaintiffs do not allege any criminal acts by any, much less all, defendant, and (4) there are no facts presented to support that plaintiffs sustained am actual loss to their business or enterprise because of defendants' alleged predicate acts.

### B.      Plaintiffs Fail to Name An Enterprise

Plaintiffs must assert the existence of an enterprise to maintain a claim under Part (c) of Section 1962 of the RICO act.  *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987).   An enterprise must be more than a summation of predicate acts. *Ocean Energy II v. Alexander & Alexander, Inc.,* 868 F.2d 740, 748 (5th Cir.1989); *see also Landry v. Air Line Pilots Ass'n Intern AFL-CIO,* 901 F.2d 404, 433-34 (5th Cir.1990)*.* As defined by U.S.C. 18 §1961(4), "enterprise" includes ". . . any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  Thus, the RICO

5

act encompasses two kinds of enterprises: legal entities and "associations in fact."   *United States v. Turkette*, 452 U.S. 576, 581-2, 101 S.Ct. 2524, 2528-29 (1981).   In the present case, plaintiffs fail to identify either type of enterprise which defeats their claim.

### 1.     Enterprise Not an "Association in Fact"

The enterprise cited by plaintiffs is not a legal entity.   Rather, plaintiffs name Howard, Howard and Associates, and Howard & Reed collectively as the three members of an "association in fact" enterprise.  (See Complaint, ¶¶ 12-14).   Under the RICO act, an association in fact enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Delta Truck,* 855 F.2d at 243; *Landry v. Air Line Pilots Ass'n Intern AFL-CIO,* 901 F.2d at 433; *Manax v. McNamara,* 842 F.2d 808, 811 (5th Cir. 1988); *Foval v. First Nat'l Bank of Commerce in New Orleans,* 841 F.2d 126, 129-30 (5th Cir. 1988); *Montesano v. Seafirst Commercial Corp.,* 818 F.2d at 426-27; *Atkinson v. Anadarko Bank & Trust Co.,* 808 F.2d 438, 440-41 (5th Cir. 1987), *cert. denied,* 483 U.S. 1032, 107 S.Ct. 3276 (1987); *Shaffer v. Williams,* 794 F.2d 1030, 1032 (5th Cir. 1986).   The enterprise named here by plaintiffs in no way meets the legal definition of an "association in fact" enterprise.

Plaintiffs must also prove that, within the alleged enterprise, there exists an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure within the association.  *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir. 1989); *In re Mastercard International Inc.*, *Internet gambling Litigation,* 132 F.Supp.2d 468 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002)(cased dismissed without requisite facts proving

elements necessary for enterprise).  Plaintiffs make no such showing: they fail to identify the organizational structure of the enterprise, they do not allege that the enterprise has a separate existence from the alleged pattern of racketeering, and they do not allege that it is a continuing organization.  These omissions defeat their RICO claim.

### a.      No Structure Defined

Notwithstanding plaintiffs' legal obligation to define the structure of the enterprise, they actually refer to Howard and Associates as "a law practice of unknown structure" and Howard and Reed as "a law practice not a partnership but otherwise of unknown structure. . . " (See Complaint, ¶¶ 7, 8).  Plaintiffs provide **no information** regarding the structure or organization of the alleged enterprise.  Plaintiffs even admit in their RICO Statement that the "exact structure of defendant enterprise(s) is not presently known." (See Rico Statement, ¶ 1).  Indeed, plaintiffs only allege that the enterprise is "an association of licensed and regulated attorneys maintaining at least two office locations, maintaining a staff, and representing presumably numerous clients other than the Plaintiffs in this action." (See Complaint, ¶ 17).  Plaintiffs' definition of the structural hierarchy is woefully inadequate.  Based upon current jurisprudence, these omissions are fatal to plaintiffs' RICO claim.

For example, in *Broyles v. Wilson*, 812 F.Supp. 651 (M.D. La. 1993), *aff'd*, 3 F.3d 439 (5th Cir. 1993) plaintiff initially alleged in her RICO claim that the "association in fact"enterprise consisted of four entities:  the Academy, Cradle Haven Inc., Saint Elizabeth Foundation Inc., and Gail House Foundation.  *Id.* at 656.  Plaintiff asserted that the four entities conspired to put her law firm, who assisted in the adoption of babies, out of business.  The Court noted that the plaintiff failed to show any ongoing structure, formal or informal, of the alleged enterprise, that it functioned over

time through a hierarchical, or that it had a consensual decision-making structure among the members within the purported enterprise.  *Id.* at 657.  The Court observed that "Plaintiffs have merely strung these groups together alleging they are 'in communication and involved in certain common activities . . .'"  *Id.*

This is exactly what plaintiffs here have done; they merely aver that the three individual entities named create a separate enterprise but **provide no facts** to support their averment.  Because plaintiffs have not defined the decision making or hierarchal structure of the enterprise as required by the RICO act and, indeed, admit that they have no knowledge of the structure of the association in fact enterprise, plaintiffs fail to meet their burden of proving the existence of an enterprise. Without an enterprise, there can be no RICO claim.

### b.        No Facts Showing Enterprise is Continuing

Furthermore, the "associate in fact" enterprise **must have continuity of its structure and personnel**, which links the defendants, and a common or shared purpose.  (Emphasis added). *Shaffer v. Williams,* 794 F.2d at 1032-33; *Delta Truck & Tractor, Inc. v. J. I. Case Co.,* 855 F.2d at 243; *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d at 433 (alleged association in fact enterprise must function as a continuing unit); *United States v. Turkette*, 452 U.S. at 583.   Indeed, continuity or the ongoing nature of an association in fact is the linchpin of enterprise status.  *Ocean Energy II,* 868 F.2d at 749.

Yet, plaintiffs **allege no facts** evidencing that the enterprise is on-going and functions as a continuing unit with a shared or common purpose as is required by the language of the statute and the Fifth Circuit. *U.S. v. Phillips*, 664 F.2d 971 (5th Cir. 1981), *cert. denied sub nom.*, 457 U.S.

8

1136, 102 S.Ct. 2965.   Indeed,  plaintiffs admit that one of the entities of the "enterprise" has operated under different names.  (See Complaint, ¶ 8).  Plaintiffs do not allege any continuity of personnel; all they state is that the enterprise "maintains a staff."  (See Complaint, ¶ 17).  Thus, plaintiffs not only fail to offer any evidence that the members of the purported enterprise have a continuing relationship and/or function as a continuing unit, but they admit that it **has not** functioned as a continuing unit. This omission is telling and the claim must be dismissed.

### 2.    Enterprise Has No Stated Common or Shared Purpose

As stated *supra*, an enterprise must associate for the common purpose of engaging in a course of conduct.  *U.S. v. Turkette,* 452 U.S. 576.  For example, in *Atkinson v. Anadarko Bank and Trust Co.,* 808 F.2d 438, plaintiff had named the bank, its holding company, and three of its employees as an "association in fact" enterprise in her RICO claim.   The Court found that plaintiff had failed to prove that the holding company, bank employees, and bank associated in any manner apart from the activities of the bank.  *Id.* at 441.  Further, there was no evidence that the members of the enterprise functioned as a continuous unit.  The RICO claim was dismissed.

The same holding is warranted here.  In the present suit, plaintiffs do not allege or recite facts to support that the three entities, which collectively form the alleged "enterprise," are associated for the common purpose of engaging in a course of conduct to defraud clients. Rather, plaintiffs merely state that the so-called enterprise is distinct from Howard, which is irrelevant to the definition of the enterprise.  (See Complaint, ¶14).  There is no allegation or supporting facts that the three entities associate at all, much less for the common purpose of racketeering.  In sum, plaintiffs inability to define an enterprise alone is sufficient reason to dismiss the RICO claim.

### 3.      Defendants Cannot  Be An Enterprise

The correct defendant in a RICO claim is the named "person."  *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1998).  However, plaintiffs here incorrectly aver that the defendants, i.e., those who are liable, are also the "association in fact" enterprise.  (See Complaint, ¶¶ 15, 16). This flies in the face of the clear language of the statute and relevant jurisprudence holding that the defendant(s) cannot also be the entity identified as the enterprise.  *U.S. v. Fairchild*, 189 F.3d 769, 776 (5th Cir. 1999), citing *Atlas Pile Driving Co. v. DiCon Financial Co., Ltd.,* 886 F.2d 986, 995 (8th Cir. 1989); see also *Haroco, Inc. v. American Nat. Bank & Trust Co. of Chicago,* 747 F.2d 384, 400 (7th Cir.1984), *aff'd on other grounds,* 473 U.S. 479, 105 S.Ct. 3292 (1985)(per curiam) ("section 1962(c) requires separate entities as the liable person and the enterprise"); *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984) ("If Union Bank is the enterprise, it cannot also be the RICO defendant");  *U. S. v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729 (1983) ("'enterprise' was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit"); *Bennett v. Berg,* 685 F.2d 1053, 1061 (8th Cir.1982) (defendant may not be both enterprise and person associated with the enterprise), *aff'd in pertinent part in banc,* 710 F.2d 1361 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527 (1983); *Kaufman v. Chase Manhattan Bank, N.A.,* 581 F.Supp. 350, 357-58 (S.D.N.Y.1984) (complaint must distinguish the enterprise from the person).

As the above decisions point out, requiring a complaint to distinguish between the enterprise and the person conducting the affairs of that enterprise in the prohibited manner (defendant) is supported by the plain language of section 1962(c), which clearly envisions two entities. Moreover,

10

requiring a distinction between the enterprise and the person comports with legislative intent and policy.  Such a distinction focuses the liability onto the culpable party, and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity. *See, e.g., B.F. Hirsch, Inc. v. Enright Refining Co.*, 751 F.2d 628, 633-34 (3d Cir. 1984); *Haroco, Inc.*, 747 F.2d at 401.  Here, plaintiffs have alleged that the defendants are both the culpable "person" and comprise the "association in fact" enterprise.  (See Complaint, ¶¶ 15, 16).  Thus confusion highlights the inadequacy of plaintiffs' pleadings and their inability to define the enterprise.

### 4.    No Evidence that Alleged Racketeering was to Control Enterprise

Plaintiffs must prove that the pattern of racketeering activity was connected to the acquisition, establishment or control of an enterprise.  *World of Faith World Outreach Center Church, Inc. vs. Sawyer,* 90 F. 3rd 118, 122 (5th Cir. 1996), *cert. denied*, 520 U.S. 1117, 1175 S. Ct. 1248 (1997).  It is axiomatic that without an enterprise, plaintiffs cannot prove that any actions taken by defendants were to control, establish, or acquire the non-existent enterprise.  In fact, because the Complaint avers that the defendants are the association in fact enterprise, it is alleging (albeit nonsensically) that defendants took actions to control, establish, or acquire **themselves**.  Again, this supports the inadequacy of the Complaint.  There was no enterprise as envisioned by RICO and this claim should be dismissed.

### C.    No Predicate Criminal Acts

Not only have plaintiffs failed to define an enterprise, they fail to cite any criminal activity or racketeering by any defendant.  RICO defines "racketeering activity," also referred to as "predicate acts," as acts indictable under any one of several federal or state offenses.  In a multi-defendant

RICO case such as here, plaintiffs must prove that **each defendant's conduct** forms a pattern of racketeering activity. (Emphasis added). See U.S.C. 1962(c); *U.S. v. Bennett,* 44 F.3d 1364 (8th Cir. 1995), *cert. denied* 516 U.S. 828 , 116 S.Ct. 98 (1995); *U.S. v. Private Sanitation Industry Ass'n of Nassua/Suffolk, Inc.,* 793 F. Supp. 1114, 1140-41, n.37 (E.D.N.Y. 1992) (plaintiff must plead and prove that predicate acts committed by each defendant constitute a pattern). Courts require the plaintiff to plead sufficient facts to notify each defendant as to his participation in the scheme. *Ducote Jax Holdings, L.L.C. v. Bradley*, 2006 WL 3313716 (E.D.La. Nov 14, 2006); *see also Goren v. New Vision International, Inc.,* 156 F.3d 721, 726 (7th Cir. 1998) (citing *Vicom, Inc. v. Harbridge Merchant Servs. Inc.,* 20 F.3d 771, 778 (7th Cir.1994). Thus, a plaintiff "cannot avoid a Rule 12(b)(6) motion to dismiss by lumping together the defendants." *In re Mastercard Int'l Inc.,* 132 F.Supp.2d at 476 (quoting *Goren,* 156 F.3d at 730) (internal quotations omitted).

For example, a complaint may not name all defendants and then mechanically add "and each of them" for each act or omission, rather than specifying each act or omission that was made by each defendant. *Lesavoy v. Lane,* 304 F.Supp.2d 520 (S.D.N.Y. 2004), *aff'd in part and vacated and remanded on other grounds,* 170 Fed. Appx. 721 (2d Cir. 2006). In the present case, this is exactly what plaintiffs have done. They simply allege that "defendants" did each action rather than specify which defendant as is required. (See Complaint, ¶¶ 22, 23, 37, 38, 40, 41, 42, 43, 44, 46, 47, 50, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, and 67). Thus, if each defendant's activities do not separately amount to a pattern of racketeering activity, that defendant is not liable under 1962(c). In the present case, plaintiffs **fail to allege any predicate acts,** much less that each defendant was engaged in a pattern of criminal activity as required.

12

The predicate acts alleged by plaintiffs include four patterns of mail fraud under 18 U.S.C. §1341 and one instance of wire fraud (incorrectly referred to by plaintiffs as a "pattern") under 18 U.S.C. §1343.  (See RICO Statement, pp. 5-8). A review of the alleged predicate acts reveals how absurd the allegations are.  Indeed, many of the allegations are contradicted by plaintiffs' Complaint and attached exhibits.   Plaintiffs allege the following patterns of racketeering:   Pattern (1) Defendants sent bills to plaintiffs on the 20th of each month with a letterhead of Howard and Reed, and/or Howard, Reed and Taylor (See RICO Statement, p. 5); Pattern (2) Defendants took non-refundable retainers from plaintiffs, performed unauthorized work, overbilled for work performed, required subsequent advances, and withdrew from representing two of the plaintiffs (See RICO Statement, p. 6); Pattern (3) Defendants required the monthly payment of an administrative fee of $20.00 but billed plaintiffs $30.00.  (See RICO Statement, p. 6); Pattern (4) Defendants shared fees collected from plaintiffs with attorneys with whom plaintiffs had no contractual arrangement (See RICO Statement, p. 7); and Pattern (5) Defendants accepted a cash advance from one plaintiff who had obtained the payment by a cash withdrawal through her credit card (See RICO Statement, p. 8). **None of these actions are either mail or wire fraud.**   In addition, St. Germain's claims are estopped, and the remainder of the claims are contradicted by the facts contained in and exhibits attached to plaintiffs' own Complaint.

### 1.      St. Germain's Claims are Estopped

St. Germain is estopped from asserting any claims stemming from Howard's legal representation of her because these claims have already been adjudicated.  Once a final judgment is rendered and signed, the claims become *res judicata*.

### (a)       Court Can Take Judicial Notice of Pleadings

This Court can review the pleadings in prior cases even though this motion is filed under Rule 12(b)(6).  Under the Federal Rules of Evidence and relevant jurisprudence in the Fifth Circuit, this Court may take judicial notice of documents that are part of public record.  FED. RULE EVID. 201.  For example, in, the Eastern District Court found no error in the Magistrate's consideration of plaintiff's EEOC Notice and Charge that defendant attached to its Motion to Dismiss.  Federal courts are permitted to refer to matters of public record when deciding a 12(b)6 motion to dismiss." *Webber v. University of New Orleans*, 1999 WL 350095 (E.D.La. May 28, 1999) *Id.* at p. 2, n.4. citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1984), *cert. denied*, 513 U.S. 868, 115 S.Ct. 189 (1994).  *Chadwick v. Layrisson*, 1999 WL 717628, p.2 (E.D.La. Sept. 13, 1999).  Accordingly, this Court should take judicial notice of the attached pleadings and judgments identified below regarding St. Germain's prior litigation with Howard.

### (b)       All St. Germain's Claims Arising from Howard's Representation of Her Are Precluded by *Res Judicata*

It is well-settled that claims adjudicated in state court cannot be re-litigated in federal court. *Langston v. Insurance Co. of North America*, 827 F.2d 1044 (5th Cir. 1987); *Castro Convertible Corp. v. Castro*, 596 F.2d 123 (5th Cir.1979).  This current suit is a rehashing of prior litigation. This saga started when Howard sued St. Germain in First City Court for a Suit on Open Account for unpaid fees.  (See Suit on Open Account attached as Exhibit "A").  That suit triggered her obligation to counter-claim that the bills were somehow irregular, were based upon unauthorized work, and/or deviated from their signed contract.  Indeed, her Answer and Defenses asserted the almost exact

14

claims that she makes in this suit. (See Answer and Affirmative Defenses attached as Exhibit "B"). The Answer was filed untimely and the Court rendered Judgment for Howard ordering St. Germain to pay the unpaid fees, attorneys fees, costs, and judicial interest. (See Judgment rendered June 15, 2007, attached as Exhibit "C"). St. Germain then filed a Petition for Nullity of Judgment which incorporated the Answer and Affirmative Defenses and re-urged the allegations of law and fact regarding her claim of breach of contract and Howard's "actions and omissions." (See Petition for Nullity, ¶¶ 15, 16 attached as Exhibit "D"). The Court refused to nullify the Judgment. (See Judgment issued September 12, 2007, attached as Exhibit "E"). Thus, a final judgment was rendered June 15, 2007, on the issue of Howard's bills to and representation of St. Germain.

Meanwhile, on July 6, 2007, St. Germain filed suit in Civil District Court against Howard again alleging breach of contract and malpractice. (See Petition No. 2007-6516 attached as Exhibit "F"). Her stated claims were identical to those she filed in First City Court and here. Howard responded with an Exception based upon *lis pendens* because of the St. Germain's then pending Petition for Nullity. (See Exception of *Lis Pendens* attached as Exhibit "G"). St. Germain opposed the Exception to Dismiss asserting that there was no other action pending. (See Opposition attached as Exhibit "H"). Howard then correctly filed an Exception based upon *res judicata*. (See Peremptory Exception of *Res Judicata* attached as Exhibit "I"). St. Germain erroneously argued in her Opposition that *res judicata* only applied to the allegations on the face of the suit on Open Account, and not her claims of breach of contract and malpractice. However, La. Rev. Stat. 13:4231 states, in pertinent part, as follows:

15

> If the judgment is in favor of the defendant, **all causes of action** existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

La. R.S. 13:4231(2) (emphasis added).

On the day of the hearing, plaintiff's counsel admitted he could not win and requested that Howard allowed him to dismiss the Petition. Howard, out of professional courtesy and ignoring the time and money spent defending the claims, agreed. (See Consent Motion to Dismiss attached as Exhibit "J").

But no good deed goes unpunished. Less than three months later, St. Germain re-filed with this Court the exact allegations as she had made in First City Court and Orleans Parish Civil District Court. Her adjudicating the identical claims in federal court that have been already adjudicated in city court by a final judgment is precluded by the principles of *res judicata* and the full faith and credit clause.

In preventing *seriatim* litigation, the U.S. Supreme Court stated that federal courts must look to state law principles of res judicata and estoppel in determining whether the second action is barred in federal court. *See The Full Faith and Credit Statute*, 28 U.S.C. § 1738 (requires federal courts to give state court judgments the same preclusive effect those judgments would be given in the courts of the states rendering them); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411(1980); *Tolefree v. City of Kan. City,* 980 F.2d 1171, 1173-74 (8th Cir.1992). The federal courts are to implement the preclusion rules of the state issuing the judgment. *Kremer v. Chem. Const. Corp.,* 456 U.S. 461, 482, 102 S.Ct. 1883 (1982).

16

A review of the state court and federal court pleadings indicates that Howard's suit on Open Account arose from the exact billings about which St. Germain now complains.  Thus, all claims, counter-claims, and defenses arising from the facts pleaded in the Petition on Open Account were adjudicated when the state court rendered a final judgment.  La. Rev. Stat. 13:4231.  Hence, as soon as the final judgment was rendered in Howard's State Suit on Open Account, *res judicata* precluded any further litigation in either federal or state court on the same claims or claims arising from the same facts.

St. Germain may argue that *res judicata* only bars her claim of malpractice and not her RICO claim, but she would be wrong.  Such an argument ignores the clear wording of La. Rev. Stat. 13:4231 and controlling jurisprudence.  The Louisiana Supreme Court has plainly stated that **all** claims arising out of the same operative facts must be brought together in a single proceeding or they will be barred by *res judicata*. In *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1238-39 (La. 1993), the Louisiana Supreme Court ruled as follows:

> [A]ll actions arising out of the same transaction or occurrence must be brought together or be subject to a plea of res judicata. La. Rev. Stat. 13:4231; La. Code Civ. Proc. Art. 425.
>
> . . . . There is only *one* cause of action (although several demands or theories of recovery may be asserted thereon) when the operative facts of one transaction or occurrence give rise to the plaintiff's right to assert the action against the defendant.

*Id.* at 1238-39 (emphasis in original).

The central inquiry is not whether the federal action is based on the same cause of action, but whether the federal action asserts a cause of action which arises out of the transaction or occurrence

which was the subject matter of the state action.  *See Lafreniere Park Foundation v. Broussard*, No. 99-30588 (5th Cir. August 8, 2000) citing La. R.S. 13:4231, comments.  The Fifth Circuit has addressed the issue on more than one occasion.  In *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 560  (5th Cir. 1983), the Court observed:  "it is black-letter law that *res judicata* . . . bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication, . . . not merely those that were adjudicated."  *See also Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1238 (l0th Cir. 1992), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98 (1992) (the doctrine of *res judicata* precludes parties from relitigating issues that were or could have been raised; parties cannot defeat its application by simply alleging new legal theories).  Here, St. Germain's allegation of mail fraud are based upon Howard's representation of her and, thus, arise from the same occurrences underlying the state court action.  Under state and federal law, she is estopped from asserting any claims arising from Howard's representation of her.  Thus, her allegations pursuant to the RICO act cannot be considered and cannot allege mail fraud.

### 2.    Defendants Did Not Commit Mail Fraud

Plaintiffs allege that all defendants engaged in patterns of mail fraud, but supply no facts in support of any criminal activity.  The Fifth Circuit has outlined the elements of mail fraud as (1) a scheme to defraud, (2) with the specific intent to commit fraud, and (3)  the use of the mails for the purpose of executing the scheme.  *U.S. v. Blocker*, 104 F.3d 720, 730 (5th Cir. 1997), *see also Mail Fraud Statute*, 18 U.S.C. § 1512.  In addition, there must be **actual injury** to the plaintiff.  *In re Burzynski*, 989 F. 2d 733, 742 (5th Cir. 1993) (emphasis added).

Rule 9(b) of the Federal Rules of Civil Procedure requires RICO plaintiffs, like any other plaintiffs pleading fraud in the federal courts, to plead "all averments of fraud with particularity." *Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir. 1992).  Rule 9(b) thus requires that plaintiffs pleading fraud "to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations."  *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir. 1986).  Most importantly, complaints charging fraud must sufficiently allege the defendant's fraudulent intent. *Graue Mill Development Corp. v. Colonial Bank & Trust Co. of Chicago,* 927 F.2d 988, 992 (7th Cir. 1991). Plaintiffs' Complaint is woefully lacking of any facts to support their allegations that defendants committed mail fraud.

Cases of mail fraud by an attorney have involved serious criminal conduct such as creating and submitting false bank and/or financial statements.  *See In re  Palmer,* 2002-1780 (La.12/4/02), 835 So. 2d 410 (attorney created and submitted fraudulent material to insurance regulators to further an insurance scheme); *In re: Nevitte,* 2002-1962 (La.9/30/02), 827 So. 2d 1135 (attorney convicted of conspiracy to commit bank fraud and mail fraud); *In re: Schneider,* 1997-2457 (La.1/30/98), 707 So. 2d 38 (attorney convicted of mail fraud for intentionally submitting false statements to a banking institution, and willfully making and subscribing a false tax return in connection with Charter Title Company); and *In re King,* 94-0686 (La.11/30/94), 646 So. 2d 326 (attorney convicted of mail fraud in connection with creating fraudulent bank documents specifically designed to mislead regulatory officials concerning the financial state of Champion Insurance Company).

Other cases of egregious conduct resulting in a conviction of mail fraud by an attorney have involved schemes to defraud the public (*In re O'Keefe*, 2003-3195 (La. 7/2/04), 877 So.2d 79, 2003-

19

3195 (attorney convicted for mail fraud for engaging in a scheme whereby he improperly solicited personal injury clients through paid runners)); insurance companies (*Louisiana State Bar Association v. Doggett*, 534 So.2d 941 (La. 1998) (Doggett staged automobile accidents and mailed fraudulent insurance claims to four different insurance companies on eight separate occasions)); and clients (*In re Gross*, 2003-3076 (La. 4/23/04), 871 So.2d 1091 (attorney convicted of mail fraud in connection with conversion of settlement funds belonging to eight clients)).

A particularly extensive pattern of mail fraud was discussed in *U.S. v. Ausburn*, 990 F.2d 625 (5th Cir. 1993).  In that case, the attorney committed mail-fraud when he offered victims letters declaring them "recipients" of a free boat and motor so long as they called a certain telephone number within seventy-two hours. Once the eager recipients called the telephone number, a salesperson solicited the purchase of other items such as ball point pens, key chains, and calendars. The "free" boat actually received in the mail by many of the victims was a small inflatable raft and motor worth $42.50. The victims, having been told that the size of the boat would require shipping charges of $89 or $99, paid that amount expecting the amount paid to cover pre-paid shipping charges only. Actually, those charges covered the price to the manufacturer of the little raft and motor together with the pre-paid shipping charges. Victims of the scheme included "literally thousands of individuals throughout the United States" with **losses exceeding $5,000,000.**

Here, plaintiffs make no allegations of such egregious illegal conduct.  Indeed, they do not allege any criminal conduct.  These following alleged "patterns of mail and/or wire fraud" are so lacking in factual and legal support and/or are contradicted by plaintiffs' own Complaint and attached exhibits, that plaintiffs should be sanctioned for their frivolous Complaint designed to

20

harass Howard.

### a.       Pattern 1:  Different letterheads not mail fraud

Plaintiffs make the incredible claim that all defendants committed mail fraud when Howard sent plaintiffs bills with the letterheads "Howard & Reed" and "Howard, Reed, & Taylor."  First, plaintiffs' statement is factually incorrect.  There were no bills identified with the specificity required that had the letterhead "Howard, Reed & Taylor," despite plaintiffs' allegation of such. The only bills that were specifically pled by plaintiffs included one bill to St. Germain with the letterhead "Howard & Reed, D. Douglas Howard, Jr." and another to Luminais with the letterhead "D. Douglas Howard, Jr., Howard & Reed."  (See Complaint, Bills attached as Exhibits P-5, P-8).  Both bills clearly state that they were from Howard, the attorney with whom each had signed a contract for services.  For plaintiffs to claim that reversing the order of the letterhead is somehow criminal is absurd; there is no legal support for such a claim.  Under their theory, every attorney and firm who changed their letterheads after Hurricane Katrina committed mail fraud, and every contract signed before the addition of a name to a letterhead would constitute fraud.  Last, and not surprisingly, plaintiffs allege no facts or documentary evidence that the reversal of the letterheads caused them an "actual injury" as required.  This allegation neither constitutes mail fraud nor a predicate act, and is representative of the absurdness of plaintiffs' Complaint.

### b.       Pattern 2:  Billing Not Criminal

Plaintiffs next allege that defendants committed mail fraud when they used the mail to (1) collect a non-refundable retainer; (2) bill for unauthorized work; (3) overbill work; (4) collect

subsequent advancements; and (4) withdraw from representation.  These allegations are untrue and/or are not illegal as discussed below.

### (1)    Collection of Retainer Not Illegal

Plaintiffs allege that all defendants committed mail fraud by collecting a "non-refundable" retainer.  This allegation fails as mail fraud for numerous reasons, with the first and most obvious being that **there is no allegation by plaintiffs that the mail was used to collect retainers.**  In fact, plaintiffs admit that the initial payments were given directly Howard when they met with him.  (See Complaint, § 50, 53 and Exhibit P-9, Receipt for Retainer at First Meeting).  Furthermore, plaintiffs cite no law prohibiting an attorney from accepting a retainer; if there was such a prohibition, the majority of attorneys would be committing federal crimes on a regular basis.  Plaintiffs also allege that each defendant committed this act without providing any factual support for their sweeping allegation.  Last, because there is no allegation that any unused  portion of the retainer was not refunded, there can be no claim that plaintiffs suffered actual damage as a result of the collection of advances.

### (2)    No Billing for Unauthorized Work

Plaintiffs' RICO Statement makes the general allegation that each defendant committed mail fraud by billing for unauthorized work.[2]   (See RICO Statement).  The Complaint alleges that defendants wrote "nasty letters" and made "nasty phone calls" to opposing counsel on behalf of St.

---

[2]      Hillyer merely alleges that Howard included information detrimental to her husband in her Petition for Divorce, but does not claim that Howard was not authorized to draft the Petition.  (See Complaint, §55).

22

Germain without her approval.  (See Complaint, §56).  Pretermitting that her claim is estopped, it still fails because there is no mention as to who write the letters, who mailed the letters, to whom they were sent, the content of the letters, the dates they were sent, and frequency of the letters despite the requirements of Rule 9(b).  This lack of specificity alone defeats any claim of fraud.  The Complaint admits that St. Germain had a contract with Howard to provide legal services for her. There is no language in the contract that Howard needed prior approval for every phone call made and/or letter sent to opposing counsel as such an arrangement would be a logistic nightmare.[3]  Using plaintiffs' logic, every attorney who did anything for his client without prior approval, even if it were not required by their contract, would be committing mail fraud.

Luminais alleges that Howard drafted and filed  a Petition for Protection from Abuse after Luminais had an altercation with her husband without her authority.  (See Complaint, ¶111).  In that same paragraph, however, Luminais admits that she agreed to the filing of the petition thus making her claim specious.  Notably, the bill sent to her by Howard documents that on January 18, 2007, Luminais met with Howard's associate for two hours while they discussed the contents of the abuse order.  (See Complaint, P-8, Luminais' Bill).  On January 19, 2007, Howard's associate spent another hour and a half on the telephone with Luminous discussing the contents of the Abuse Order and a Protective Order.  (See Complaint, P-8, Luminais' Bill).  For Luminais to now claim that she did not authorize the filing of the Protective Order is contradicted by her own documentary evidence.

---

[3]        If such an arrangement had been agreed upon, St. Germain would most likely be now complaining that its intent was to bill her for unnecessary phone calls seeking her approval for every phone call made and letter sent by Howard to others.

There are no facts to support this allegation.  Furthermore, such a generalized complaint is not mail fraud.  Otherwise, recognizing such allegations as possible mail fraud would allow clients to cry "mail fraud" every time they, in hindsight, wish they had taken a different strategy, or wished to harass their former attorney.

### (3)    No Over Billing as Predicate Offense

Plaintiffs make the generalized statement that defendants "over billed" for services rendered but give absolutely no specifics such as who overbilled and for what tasks. Such a generalized statement violates Rule 9(b) and cannot form the basis for a claim of mail fraud.[4]  Again, plaintiffs do not state how the alleged "over billing" violates federal law; they only allege that it violated the Code of Professional Ethics.  While Howard did not overbill, such disputes are better suited as claims for malpractice, not mail fraud.

In *McDonald v. Schenker*, 18 F.3d 491 (7th Cir. 1994), similar mail fraud allegations were made and dismissed.  Plaintiff argued that defendant/attorney had billed her for an inordinate amount of time at an excessive fee and failed to give her credit for an advance already paid.   The Court correctly stated that "[t]his is hardly mail fraud." *Id.* at 495.  The Court explained that there was no allegation that a bill had been sent for work never done, but only that the fee was excessive.  The Court further opined that excessive fees, even if a violation of Rules of Professional Conduct, do not constitute a scheme to defraud for purposes of mail fraud.  The words "scheme or artifice to defraud" under 18 U.S.C. § 1341, are not satisfied by merely alleging unethical conduct. *See U. S. v. Holzer,*

---

[4]    St. Germain is precluded from making this allegation under the theory of *res judicata.*

816 F.2d 304, 309 (7th Cir.1987), *cert. denied sub nom.*,486 U.S. 1035, 108 S.Ct. 2022 (1988); *U. S. v. Bronston*, 658 F.2d 920, 927 (2d Cir.1981), *cert. denied sub nom.*, 456 U.S. 915, 102 S.Ct. 1769 (1981) ("mere breach of fiduciary duty, standing alone, may not necessarily constitute mail fraud"). Therefore, plaintiffs' vague allegation of overbilling does not constitute mail fraud and cannot be considered a predicate act for purposes of RICO.

### (4)   Collecting Subsequent Advances Not Mail Fraud

Plaintiffs allege that defendants committed mail fraud by requesting subsequent advances through the mail.  They attach Exhibit P-10, which is a letter sent to St. Germain by Howard requesting an advance, as evidence and also claim that defendants requested a similar advance from Hillyer by mail in March of 2006.  As stated before, any claims regarding billing by St. Germain are not before this Court as all such claims have been adjudicated.

Nonetheless, an attorney requesting an additional retainer is in no way unethical or fraudulent, much less illegal.  Plaintiffs do not allege that the advance payment was for legal work that Howard did not perform or that Howard did not return any remaining balance after he no longer represented her.  As discussed *infra*, such billing disputes are not the fodder for mail fraud claims. If this was mail fraud, most attorneys would be committing this "crime," and be accused of racketeering.   Routine correspondence is not mail fraud and does not support a pattern of racketeering.

### (5)   Discontinuing Representation Not Fraudulent

The last claim in "Pattern 2" of racketeering mail fraud is equally meritless.  Plaintiffs allege that a letter sent by Howard to St. Germain by certified mail informing her that he wanted to discontinue representing her is mail fraud committed by all defendants.  (See Complaint, P-6,  Letter from Howard to St. Germain).  The Complaint is silent as to how such a letter was part of a "scheme to defraud" St. Germain, especially when the mailed notice comported to the requirements set forth in the contract that both St. Germain and Howard signed.   (See Complaint, Exhibit P-4).  Also, the Complaint is silent as to how the other defendants are liable and under what theory for a letter sent by Howard alerting his client that he no longer wished to represent her.

Routine correspondence between an attorney and his client hardly is a federal crime. *See Elliot v. Foufas*, 867 F.2d at 882.  Furthermore, St. Germain does not state any "actual damages" she incurred as a result of this notification.  Nor does St. Germain allege how this "defrauded" her or that this letter was a part of a scheme by all defendants to defraud her.  This letter is not mail fraud and/or a "predicate act" as contemplated by RICO.  Plaintiffs have failed to allege even a scintilla of evidence to support this alleged "pattern" of mail fraud.

### c.      Pattern 3: Billing Administrative Fee Not Mail Fraud

Plaintiffs next allege that defendants committed mail fraud by billing plaintiffs $30.00 monthly for an Administrative Fee when their respective contracts only required the payment of a $20.00 fee.  Notwithstanding that such billing disputes are **not** mail fraud, plaintiffs' facts are incorrect as evidenced by their own exhibits.  Hillyer agreed to a $20 administrative fee, but her bill is the only one not attached.  (See Complaint, Hillyer Contract, Exhibit P-2).  Luminais agreed to

26

a $30.00 fee and she was correctly billed.  (See Complaint, Luminais Contract and Bill, Exhibits P-7, P-8).  Because all of St. Germain's issues with billing have been adjudicated, her claim regarding the administrative fee will not be addressed.  Nonetheless, at worst, St. Germain was billed $10 more monthly than she agreed to pay.  Because the representation was less than five months, this error was minimal and could have easily been addressed by a telephone call or letter.  Clearly there was no scheme to defraud as Luminais was correctly charged.  Again, accepting this allegation as "mail fraud" would result in every company being criminally liable for any mistake in a bill.  This is hardly the "racketeering" Congress envisioned that RICO would stop.  This allegation does not constitute mail fraud.

### d.      Pattern 4: Purported Fee Sharing Not Wire Fraud

Plaintiffs make the unfounded and unsupported claim that defendants participated in an unauthorized fee-sharing arrangement which somehow constitutes mail fraud.  Plaintiffs fail to state what attorneys besides Howard received "fees" for no work and the amount that each attorney allegedly received.  In support of their allegation, plaintiffs claim that they received bills from "Howard, Reed and Taylor, Attorneys at Law" and "Howard and Reed, Attorneys at Law." As discussed *supra*, these allegations are incorrect, according to plaintiffs' own exhibits.  (See Complaint, Bills of St. Germain and Luminais, P-5 and P-8).  Bills were submitted by Howard to plaintiffs.  Plaintiffs assert that they tendered payments to the two aforementioned entities but supply no evidence in support; further, it would be highly unusual for a client to receive a bill from her attorney but submit payment to another entity.

Incredibly, plaintiffs claim that **if** Howard shared these fees with unknown attorneys, which he did not, his action defrauded them.  This is speculative pleading.  First, there is no allegation that Howard shared his fees with a specific attorney (which is quite different from his paying his associate for work she completed on plaintiffs' files as reflected in the bills).  But even more importantly, plaintiffs provide no explanation of how such an arrangement constitutes mail fraud or caused them actual injury as is required for this predicate act.  Their omissions defeat this claim of mail fraud based upon a fictional fee-sharing arrangement.

### 2.    Pattern 5: No Evidence of Wire Fraud

Plaintiffs allege that defendants engaged in a pattern of wire fraud because Luminais paid her retainer on January 12, 2007, during a meeting with Howard with cash that she obtained with a cash advance *vis-a-vis* her credit card.  Basically, she is alleging that defendants are criminally liable for an action she took.   This allegation is totally illogical and certainly does not constitute wire fraud.

Wire fraud is prohibited by U.S.C. 18 § 1343:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

To prove wire fraud, plaintiffs must prove: (1) defendants' knowing and willing participation in scheme or artifice to defraud with specific intent to defraud, and (2) use of interstate wire communications in furtherance of scheme. *U.S. v. Sawyer*, 85 F.3d 713 (1st Cir 1996).  The **only**

actor in this allegation of wire fraud is Luminais, not any defendant, who paid her retainer for legal services to Howard with a cash advance through her credit card.  This advance was agreed upon in the written contract for services that Luminais signed and was depleted over several months for services rendered as detailed in her billing statement.  (See Complaint, P-8, Luminais' Bill).

This claim is so far-reaching that it underscores the paucity of plaintiffs' claim that defendants were involved in racketeering.  Wire fraud requires evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations. *See Crowe v. Henry,* 115 F.3d 294, 297 (5th Cir.1997).  The complained-of action in the present case is not wire fraud and cannot be a predicate act to establish a RICO violation. Also, to be a "pattern of racketeering" there must be at least two predicate acts alleged; the "pattern" alleged is a sole act (committed by Luminais!) which falls woefully short of the requirement for a RICO claim.  Notwithstanding the obvious omission of **two** alleged acts of wire fraud, the single instance cited is not wire fraud.  First and foremost, **Luminais** chose to get a credit card advance for cash; thus, she used interstate wire communications – not the defendants.  Second, plaintiffs fail to allege how the payment of a retainer with cash via a credit card is fraud absent an allegation either that no work was completed or the remaining funds were not returned.  Third, plaintiffs fail to explain how Luminais' decision to use her credit card for a cash advance was the furtherance of defendants' purported scheme to defraud her.  Last, plaintiff allege no facts that defendants intended to defraud Luminais by accepting a retainer.

**D.     No Evidence of Racketeering Activity**

Plaintiffs have failed to prove any criminal acts much less a pattern of racketeering. Racketeering activity consists of two or more predicate offenses, including acts violating federal wire

or mail fraud statutes. *World of Faith World Outreach Center Church, Inc. vs. Sawyer,* 90 F. 3rd at 122. A pattern of predicate acts must amount to or threaten continuing racketeering activity. *In re Buryznski*, 989 F.2d at 742. This refers to a closed period of repeated conduct, or to past conduct, that by its nature projects into the future with a threat of repetition. *Id.* There is no threat of future repetition – Howard terminated two of the representations, and the other has concluded.

Plaintiffs have completely failed to substantiate the continuity prong. They supply no facts to show that defendants committed any racketeering predicate acts, much less ones that amount to or pose a threat of continued criminal activity. This omission alone requires that their claim be dismissed. *See H.J., Inc. vs. Northwestern Bell Telephone Co.,* 492 U. S. 229, 239, 109 S. Ct. 2893, 2900 (1989), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2306 91992); *C & B Sales & Service, Inc. v. McDonald,* 95 F. 3rd 1308, 1319 (5th Cir. 1996), *opinion modified on denial of rehearing*, 111 F. 3d 27 (5th Cir. 1997) (affirming decision to dismiss state law fraud claim); *Word of Faith World Outreach Center Church, Inc. v. Sawyer,* 90 F.3d 118, 122, (5th Cir. 1996), *cert. denied*, 520 U.S. 1117, 117 S. Ct. 1248.

All the complained-of actions occurred during the representation of three individuals were not illegal, and unequivocally do not constitute a pattern as contemplated by the RICO act.[5] For example, in *Buryznski*, the Fifth Circuit held that the alleged predicate acts that took place during the course of a civil litigation did not constitute or threaten long-term criminal activity because once

---

[5] Plaintiffs attach a list of clients who were sued by Howard over the last ten years for non-payment as "evidence" of his continuing overbilling. That list only proves that some clients are delinquent in paying fees; it is no reflection of Howard's overbilling which is not a predicate act.

the litigation ended, any threat of continuity ended. *In re* Burzynski, 989 F.2d 733. The same finding is warranted here as all representatives were brief and have ended. Also, where there is **no finding of any predicate acts**, there cannot be a finding of a threat of continued illegal activity.

> **E.      No Evidence of a Loss to Plaintiffs' Business or Enterprise**

RICO only provides damages for claimed injuries to plaintiff's "business or property." 18 U.S.C. §1964 (c). An "injury to business or property" under the RICO statute **must** consist of a concrete financial loss. (Emphasis added). *Pedrina v. Chun,* 906 F. Supp. 1377 (D. Hawaii 1995), *aff'd*, 97 F.3d 1296 (9th Cir. 1996), *cert. denied sub nom.*, 520 U.S. 1268, 1175 S. Ct. 2441 (1997). RICO requires a causal connection between the predicate mail and/or wire fraud and the plaintiffs' injuries include "but for" and "proximate causation." *Summit Properties, Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 558 (5th Cir. 2000), *cert. denied*, 531 U.S. 1132, 121 S.Ct. 896 (2001). Reliance on that predicate act of fraud is a necessary component of proximate causation. *Id.* at 562. Thus, plaintiffs must demonstrate that the asserted RICO violations directly caused their actual claimed losses, as opposed to seeking a recovery for indirect injuries. *See Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268-269,112 S. Ct. 1311, 1321 - 22 (1992); *Marriot Bros. v. Gage,* 911 F. 2d 1105, 1108 (5th Cir. 1990); *National Enterprises, Inc. v. Melon Financial Services, Corp. No. 7,* 847 F. 2d 251, 254 (5th Cir. 1988); *Adams-Lundy v. Association of Professional Flight Attendants,* 844 F. 2d 245, 250 (5th Cir. 1988).

Here, plaintiffs incorrectly assert they suffered "actual" damages including the fees they paid for Howard's services, interest paid on loans taken to pay Howard's fees, fees expended [by St. Germain] to resist Howard's Suit on Open Account, the investment value of the fees paid, and

speculative losses due to the arrangements ordered by the Court in the underlying divorce suits. These are certainly not "actual damages" and were not incurred because of racketeering.

First, because there are no predicate offenses, plaintiffs cannot prove any losses based upon what does not exist. Nonetheless, plaintiffs allege that they suffered a concrete financial loss in the amounts of fees paid to Howard by each plaintiff for services rendered. (See RICO Statement, No. 17). St. Germain is estopped from claiming any damages from Howard's representation under the theory of *res judicata*. The remaining plaintiffs do not allege that Howard did not perform those acts for which he billed (although they dispute whether he handled the suit as they wished), so it is disingenuous at best that Luminais and Hillyer are claiming payments made to Howard for services that he rendered are "actual losses." Furthermore, many of the purported losses claimed by plaintiffs are speculative and derivative, such as alleged money paid to subsequent attorneys or money "that has been or may have been lost by Plaintiffs having to accept unfavorable support or property arrangements. . ." (See RICO Statement, No. 16). Such speculative losses are not recognized as actual losses in a RICO violation, because a RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable. *Trs. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech, Inc.,* 886 F.Supp. 1134, 1146 (S.D.N.Y.1995); *First Nationwide,* 27 F.3d at 768 (citing *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1106 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 1643(1989)). Indeed, if speculative damages were "actual losses," every client who had a bill dispute or was unhappy with his or her results and/or damages obtained at the conclusion of litigation would sue their attorney under RICO. This was never the intent of Congress when enacting the RICO act. Plaintiffs have suffered no actual losses and the RICO claim must be

dismissed for this and the plethora of reasons stated *supra*.  The allegations made and facts supplied

to support plaintiffs' RICO claims are so absurd, sanctions must be considered by this Court.

## II.     Hillyer's State Claims Have No Merit

### A.     Breach of Contract and Malpractice Claims Must be Dismissed

Hillyer's breach of contract claim against Howard arises out of the contract she signed

procuring Howard's legal services.  (See Complaint, P-2, Hillyer's Contract).  Specifically, she

alleges that Howard breached the contract "by conducting their underlying divorce case with

complete disregard of Plaintiff's clearly-stated wishes" and committed malpractice with "his manner

of abrupt, unlawful withdrawal."  (See Complaint, ¶¶98 and 99).  Plaintiff admits that the petitions

about which she complains were filed on November 2005 and May 2006. (See Complaint, ¶101).

The Complaint also provides that Howard withdrew from his representation of Hillyer on June 5,

2006.  (See Complaint, ¶62).

Both of Hillyer's claims are perempted under La. R.S. 9:5605 as they were filed well over

a year from when Howard's representation ended.  That Section reads in pertinent part, as follows:

> **No action for damages against any attorney at law** duly admitted
> to practice in this state, any partnership of such attorneys at law, or
> any professional corporation, company, organization, association,
> enterprise, or other commercial business or professional combination
> authorized by the laws of this state to engage in the practice of law,
> **whether based upon tort, or breach of contract**, or otherwise,
> **arising out of an engagement to provide legal services** shall be
> brought unless filed in a court of competent jurisdiction and proper
> venue **within one year from the date of the alleged act, omission,**
> **or neglect**, or within one year from the date that the alleged act,
> omission, or neglect is discovered or should have been discovered;
> however, even as to actions filed within one year from the date of
> such discovery, in all events such actions shall be filed at the latest

> within three years from the date of the alleged act, omission, or
> neglect. (Emphasis added)
>
> * * *
>
> The one-year and three-year periods of limitation provided in
> Subsection A of this Section are peremptive periods within the
> meaning of Civil Code Article 3458 and, in accordance with Civil
> Code Article 3461, may not be renounced, interrupted, or suspended.

See La. R.S. 9:5605. Under this Section, a claim against an attorney, "whether based upon tort, or breach of contract, or otherwise," must be filed "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered." There is no question that Hillyer knew of the allegations contained in the Petitions when they were filed and that she knew when Howard withdrew from representing her. Thus, any claims she had against Howard for breach of contract arising from providing legal services and legal malpractice had to filed prior to June 5, 2007. This Complaint was not filed until November 20, 2007. Thus, Hillyer's claims of breach of contract and malpractice against all defendants are perempted and must be dismissed with prejudice.

## III. St. Germain's State Claims Are Estopped, Prescribed Under La. Rev. Stat. 9:5605, and Have No Merit

### A. All Claims Estopped

As discussed at length *supra*, the issues raised by St. Germain are the same she raised in both First City Court and Civil District Court. There was a final judgment rendered for Howard which estops St. Germain from asserting the same claims here. Notably, St. Germain raised none of these issues until she was sued by Howard for unpaid fees; her motives here are transparent. Nevertheless,

all her claims of breach of contract and malpractice are estopped and must be dismissed with prejudice.

**B.    Legal Malpractice**

St. Germain claims that Howard committed malpractice by

(1)    Not telling her until July 10, 2006, more than a year before filing this suit that he had known a deceased relative of her ex-husband's (See Complaint, ¶78 and 79);

(2)    Using questions supplied by the plaintiff in the depositions of her husband and his purported girlfriend on July 11 and 14, 2006, more than a year before filing this suit, respectively (See Complaint, ¶81);

(3)    Failing to pursue a divorce, more than a year before filing this suit, based upon the fault of the husband and not opposing a no-fault divorce judgment which was entered on August 12, 2006 (See Complaint, ¶83);

(4)    Not pursuing retroactive support payments during his representation of her and more than a year before filing this suit (See Complaint, ¶85);

(5)    Writing antagonizing letters and making unauthorized telephone calls while representing her and more than a year before filing this suit (See Complaint, ¶85);

(6)    Billing more than a year before filing this suit for both him and his associate to perform the same tasks.  (See Complaint, ¶85 and Plaintiff Bill, Exhibit P-5 dated August 20, 2006);

(7)    Telling St. Germain more than a year before filing this suit what he had heard "through the grapevine" about her seeking other representation prior to November 20, 2006 (See Complaint, ¶87);

(8)    Allegedly asking St. Germain to sign verifying affidavits in June of 2006, which was more than a year before filing this suit (See Complaint, ¶88);

(9)    Requesting an additional retainer on July 27, 2006, more than a year before filing this suit (See Complaint, ¶89);

(10)    Allegedly bullying her and raising his voice during the time he represented her and more than a year before filing this suit (See Complaint, ¶90);

(11)    Overbilling with the last bill being sent to her on September 20, 2006, more than a year before filing this suit (See Complaint, ¶89 and Exhibit P-6 attached to Complaint); and

(11)    Withdrawing from representing her on November 21, 2006 (See Complaint, ¶¶92 and 93).

Although these allegations are either false, not malpractice, or improperly before this Court as they already have been adjudicated, all but one have prescribed. The remaining allegation is neither malpractice nor breach of contract and has been adjudicated in state court.  St. Germain's claims of must be dismissed.

### 1.    Peremptive Period Applies

Even if the claims were not estopped, which they are, all but one claim is perempted.  In an attempt to resurrect her extinguished right to pursue her claims of breach of contract and malpractice, St. Germain incorrectly asserts that the peremptive period is inapplicable here pursuant to La. Rev. Stat. 9:5605(E).  That statute provides that the peremptive period does not apply in cases of fraud, as defined in Civil Code Article 1953.   She alleges that Howard committed fraud by not informing her when she signed her contract that he had known her ex-husband's grandfather, who was deceased at the time of the proceedings.

La. Civ. Code art. 1953 defines fraud as

> [A] misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss of convenience to the other.  Fraud may also result from silence or inaction.

La. Civ. Code art. 1953.  The circumstances constituting fraud **must be alleged with particularity**. La. Civ. Code art. 856 (emphasis added).  Two elements are necessary to prove fraud: an intent to

36

defraud and actual or potential loss or damages. *Transworld Drilling Co. v. Texas General Resources, Inc.,* 604 So. 2d 586, 590 (La. App. 4 Cir. 1992), *writs denied,* 608 2d.174 (La. 1992). Thus, St. Germain must allege both a misrepresentation, suppression, or omission of true information by Howard and his intent to obtain an unjust advantage or to cause damage or inconvenience to another. *Shelton v. Standard/700 Associates,* 2001-0587, p. 5 (La.10/16/01), 798 So. 2d 60, 64; *Whitehead v. American Coachworks, Inc.*, 2002-0027 (La. App. 1 Cir. 12/20/02), 837 So. 2d 678, 682. The U.S. Fifth Circuit summed up the elements to sustain a claim for fraud under Louisiana law as follows: (1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury. *Abell v. Potomac Ins. Co. of Illinois,* 858 F.2d 1104, 1131 n. 33 (5th Cir. 1988), *vacated on other grounds sub nom.,* 492 U.S. 918, 109 S.Ct. 3242 (1989).

For example, in *Coffey v. Block*, 1999-1221 (La. App. 1 Cir. 6/23/00), 762 So. 2d 1181, *writ denied*, 2000-226 (La. 10/27/00), 772 So. 2d 651, the appellate court remanded finding that the allegations of fraud had been sufficiently pled. In that case, plaintiff alleged that her attorney did not investigate the date of her accident, which was on February 28, 1992, and filed suit on March 2, 1993. After the opposing counsel filed a Motion to Dismiss based upon prescription, plaintiff's attorney told plaintiff in May of 1993, that he had met with the judge and that the date of the accident was correct. Plaintiff did not learn that the attorney had lied until November 22, 1996, when the Motion to Dismiss was granted. She filed suit against her attorney in August of 1997. In her Petition, she alleged the above facts and that the attorney withheld the information so that her claim would prescribe. The appellate court held her allegations were sufficient as all required elements to prove fraud had been alleged: the attorney misrepresented the date of the accident, and he lied

37

about the conversation with the judge for the purpose of delaying the potential malpractice lawsuit.

In comparison, the allegations in St. Germain's Complaint are nowhere near as sufficient and do not allege with particularity facts to support fraud.  First, there was no misrepresentation of a "material fact."  Indeed, her entire claim of "fraud" is that Howard knew her ex-husband's deceased grandfather.  She does not explain the nature of the relationship between the men or even how long the grandfather had been deceased.  She admits, however, that Howard informed her of the fact!  This is neither misrepresentation or omission.  Simply knowing a person related to her ex-husband does not create such a conflict of interest to become a material fact.  She learned this fact in July of 2006, but admits that she continued to keep Howard as her attorney.  Her actions operate as ratification of the contract.

Second, at no time does St. Germain allege that Howard intentionally and deliberately withheld this sole fact from St. Germain, much less for the purpose of harming her.  Last, she does not state how his not informing her of this fact until July of 2006 created an unfair advantage or caused her damage.[6]  She had the option of terminating her relationship with Howard if she believed his knowing a deceased relative of her ex-husband caused her damage, but she did not.  Her claim of fraud is disingenuous at best and cannot defeat peremption.

------

[6]      It can be inferred that Howard informed her of this in July of 2006, because that is when he became aware of the relationship.  She offers no facts to the contrary.  In fact, she admits the grandfather had a different surname than her husband making the connection less than obvious. (See Complaint, ¶ 78).

### 2.    All But One Claim are Perempted

Because there was no fraud, the one-year peremption applies to her allegations.  All the aforementioned instances of alleged malpractice, with the exception of Howard's withdrawal, are prescribed.  As stated *supra*, a claim against an attorney, "whether based upon tort, or breach of contract, or otherwise," must be filed "within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered."  See La. R.S. 9:5605.  There is no claim by St. Germain that she did not know of any of these incidents until after November 21, 2006, and she admits that she knew of each of the allegations, except the withdrawal, as early as July 10, 2006, and prior to November 21, 2006.  Thus, any claim of malpractice based upon the above, except the withdrawal, are perempted.

### 3.    Withdrawal is Not Malpractice

The only alleged malpractice that was timely assered by St. Germain is Howard's withdrawing as her attorney upon learning that St. Germain was seeking representation elsewhere. (See Complaint, ¶91).  To prove a claim for legal malpractice, plaintiff must prove: (1) there was an attorney-client relationship; (2) the attorney was negligent; and (3) that negligence caused plaintiff some loss.  *Couture v. Guillory*, 1997-2796 (La. App. 4 Cir. 4/15/98), 713 So. 2d 528, *writ denied,* 1998-1323 (La. 6/26/98), 719 So. 2d 1287 (La.1998) (quoting *Scott v. Thomas*, 543 So. 2d 494 (La. App. 4 Cir.1989)).  St. Germain does not assert facts to plead the second or third element.

Howard's withdrawal under the facts at hand is in no way malpractice.  Plaintiff admits in her Complaint that the contract allowed for Howard's withdrawal "for any other reason." The contract that St. Germain signed, which is attached to her Complaint, provides

39

> At our discretion, we have the right to withdraw form your case if you
> have misrepresented or failed to disclose material facts from us, if
> you fail to follow our advice, if you demand that we do anything
> which we consider unlawful, unprofessional, or unethical, or for any
> other reason.

(See Complaint, P-4, St. Germain's Contract).

Howard's withdrawal from representing St. Germain in accordance with their contract, and with advance notice, is not malpractice. He informed her in writing by certified mail that he thought it best under the circumstances that she find other representation and notified her of an upcoming hearing which was a month away.[7]  (See Complaint, P-5, Letter to St. Germain).  Plaintiff does not allege that she opposed his withdrawal or that the Court questioned it because neither of these acts occurred.  To withdraw from a case is not malpractice.

Nonetheless, St. Germain alleges that the withdrawal violated Rule of Professional Conduct 1.16(b)(5) which states that a lawyer may withdraw if "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled."  La. Rules Prof. Conduct, Rule 1.16(b)(5).  This argument has no relevance here; Howard did not withdraw because St. Germain did not fulfill an obligation.  The Rules of Professional Conduct allow an attorney to withdraw if the withdrawal will not have a materially adverse effect on the interests of the client.  La. Rules Prof.

---

[7]     St. Germain's claim that Howard learning she was looking for another attorney in no way proves he violated any confidentiality by what he heard.

Conduct, Rule 1.16(b)(1).[8]  Although St. Germain had a hearing to attend the following month for contempt, she makes no allegation that her interests were compromised in that hearing due to her hiring other counsel. The Rules also allow for an attorney's withdrawal if "other good cause exists." La. Rules Prof. Conduct, Rule 1.16(b)(7).   The letter sent by Howard to St. Germain made it clear that he was withdrawing because she was seeking other representation.  (See Complaint, P-5, Letter to St. Germain).  Her seeking other counsel is "good cause" for his withdrawal.  Last, her contract with Howard allowed for his withdrawal for any reason.

St. Germain has presented no facts in her Complaint and in the attachments thereto that support her claim that Howard's withdrawal was malpractice.  Because her claim of malpractice based upon his withdrawal has no merit, and all her other claims are both estopped and perempted, all of St. Germain's claims of legal malpractice should be dismissed with prejudice.

### 4.    Even if Claims Were not Estopped or Peremtped, None Evidence Malpractice

St. Germain alleges Howard committed malpractice by billing for him and his associate to perform the same tasks.  According to St. Germain's bill, she was billed for Howard and Miller's (his associate) time on July 16, 2006, when both attended depositions on her behalf.  (See Complaint, P-5, St. Germain's Bill). Her contract states that both Howard and his associate bill time for performing work together.  (See Complaint, P-4, St. Germain's Contract).  Billing pursuant to the agreed upon terms of a contract is hardly malpractice.  Likewise, requesting a retainer and advances are legitimate

---

[8]    The Rule states ". . . a lawyer may withdraw from representing a client if: (1) withdrawal can be accomplished without material adverse effect on the interest of the client. . . "

business practices. Her allegations are so without merit, they could be dismissed for this reason alone.

### C.      Breach of Contract

St. Germain makes the conflicting and illogical claims that (1) Howard's contract is unenforceable because it is one of adhesion, and (2) that Howard breached his contract with her. Her claim must be dismissed because they are estopped and perempted, and she alleges no facts to support the contract was one of adhesion. The contract was not one of adhesion, her claims of breach of contract are subsumed in her claim for legal malpractice and, thus, are perempted.

### 1.      Contract Was Not One of Adhesion

Contrary to St. Germain's assertion, the contract which she signed cannot be equated with a contract of adhesion as defined in *Golz v. Children's Bureau of New Orleans, Inc.,* 326 So. 2d 865 (La. 1976). According to the Louisiana Supreme Court, the broad definition of an adhesion contract is "a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms." The contract in the instant case contained no "small print" and contains St. Germain's initials throughout. (See Complaint, P-4, St. Germain's Contract). Clearly, she reviewed the contact with Howard, but did not change any of the language at that time. Because Howard was St. Germain's third divorce attorney, and not her last, she cannot allege with any credibility that she was unfamiliar with attorney contracts. Last, there is nothing that precluded her from having contract reviewed by another

attorney or anyone else before she signed it.  Her claim that the contract was one of adhesion has no merit and the contract is enforceable.

### 2.   Contract is Not Contrary to Public Law

St. Germain makes the sweeping and unsubstantiated assertion that the contract contains provisions that are contrary to the law and public morals and, thus, is unenforceable.  However, she provides no facts to support her claim: she fails to identify which provisions violate which law.  Such a vague claim cannot morph a legal contract into an unenforceable one.  This claim should be dismissed.

### 3.   Plaintiff's Breach of Contract Claims Perempted

All of the breach of contract claims St. Germain alleges arise out of the legal representation provided her by Howard.   As stated *supra*,  "No action for damages against any attorney at law . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect. . . ."  La. Rev. Stat. 9:5605.  Therefore, La. Rev. Stat. 9:5605 controls St. Germain's breach of contract claims.

For example, in *Granger v. Middleton*, 2006-1351 (La. App. 3 Cir. 2/7/07), 948 So. 2d 1272, the plaintiff filed a breach of contract claim against his attorney for overbilling and alleged that a ten-year prescription applied.  The Court disagreed because La. Rev. Stat. 9:5605 applies to all claims arising out of an engagement to provide legal services whether the claims are based upon tort or contract.  *Id.* at 1274.  The Court further held that "accordingly, the one and three year periods provided by La. R.S. 9:5605 are applicable to both tort and contract claims raised by the action sub

judice." *Id.*  The result is warranted here.  All of St. Germain's breach of contract claims arise from her contract with Howard for his legal services and are, thus, prescribed with the exception of her claim regarding his withdrawing representing her.  Furthermore, even if they were not perempted, which they are, all her claims are estopped.

### 4.        No Breach of Contract for Howard's Withdrawal

Although not perempted but estopped, defendants, in an abundance of caution, will address St. Germain's allegation about Howard's withdrawal. St. Germain alleged that Howard's withdrawal from representing her was a breach of contract.  But she admits in her Complaint that the contract allowed for Howard's withdrawal "for any other reason."  (See Complaint, ¶91).  Interpretation of a contract is the determination of the common intent of the parties.  La. Civ. Code art. 2045.  When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. The words of a contract must be given their generally prevailing meaning. La. Civ Code art. 2047.  The language to which plaintiff refers is clear and needs no interpretation.

A person who signs a written contract is presumed to know its contents and cannot avoid its obligations by contending he did not read the document, or that it was not explained, or that he did not understand it, barring misrepresentation, fraud, or violence. *Jeasonne v. Attorney's Liability Assur. Soc.*, 2003-1985 (La. App. 4 Cir. 12/15/04),  891 So. 2d 721, 726, *writ denied*, 2005-0141 (La. 3/24/05), 896 So. 2d 1043; *Tweedel v. Brasseaux,* 433 So.2d 133 (La.1983); *Boh Bros. Construction Co. v. Price*, 2000-2233, p. 6 (La. App. 4 Cir. 8/29/01), 800 So.2d 898, 902, *writ denied*, 2001-2623 (La. 12/14/01), 804 So. 2d 898.  The courts are bound to enforce the contract as

44

written. *Cooper v. Olinde,* 565 So.2d 978 (La. App. 1 Cir.1990), *writ denied,*569 So.2d 966 (La.1990); *Bond v. Allemand,* 632 So.2d 326 (La. App. 1 Cir.1993), *writ denied,*94-0718 (La. 4/29/94), 637 So.2d 468.  It is not within the province of the courts to relieve parties of their bad bargains or those they later regret.  *Maloney v. Oak Builders, Inc.,* 256 La. 85, 235 So.2d 386 (La. 1970); *Hanover Petroleum Corporation v. Tenneco Inc.,* 521 So. 2d 1234 (La. App. 3d Cir.1988), *writ denied,*526 So. 2d 800 (La.1988).

St. Germain now alleges that the language asserting Howard's right to withdraw for any reason created a  resolutory condition which is one that depends solely on the will of the obligor and must be fulfilled in good faith.  La. Civ. Code art. 1770.  She claims that his withdrawal was not in good faith but does not explain why.  To comply with the requirements of good faith, the party exercising his right to terminate a contract must consider the hardship to which the other party will be subjected because of the termination.  In the present case, Howard had learned that St. Germain was seeking other representation.  In a letter sent by certified mail to her, he opined that, based upon what he had learned, he believed they both wanted to terminate the relationship, and he asked her to contact him.  (See Complaint, P-6, Letter to St. Germain).  In that letter, he alerted her to a hearing that was scheduled for the next month so that she could either continue the hearing or have another attorney handle the case.  After notifying her of his intent, Howard filed a Motion to Withdraw with the Court who approved his withdrawal without any opposition from St. Germain.  Thus, his actions in no way indicate "bad faith" and there was no breach of contract.  This claim and all other of St. Germain's breach of contract and malpractice claims should be dismissed with prejudice.

**IV.     Luminais' State Claims Have No Merit**

    **A.     Malpractice**

Luminais alleges that Howard committed malpractice by overbilling and/or billing her for unauthorized work, and asking her to sign a verification before she reviewed the Petition to which it applied.  In an action for legal malpractice, the plaintiff must show that the attorney failed to exercise that degree of care, skill and diligence which is exercised by prudent practicing attorneys in his locality; however, he is not required to exercise perfect judgment in every instance. *Nelson v. Waldrup*, 565 So.2d 1078 (La. App. 4 Cir.1990), *writ denied*, 569 So. 2d 962 (La. 1990); *Ramp v. St. Paul Fire & Marine Ins. Co.*, 263  La. 774, 269 So.2d 239 (1972); *Jenkins v. St. Paul Fire & Marine Ins. Co.*, 422 So.2d 1109 (La.1982).  As stated, *supra*, plaintiff must prove (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss to the client caused by that negligence. *Francois v. Andry*, 2005-0388 ( La. App. 4 Cir. 4/5/06), 930 So.2d 995.

The proper method to assess whether an attorney's malpractice is a cause in fact of damage to his client is determining whether the correct performance of that act would have prevented the damage. *Prestage v. Clark,* 1997-0524 (La. App. 1 Cir.12/28/98), 723 So.2d 1086, 1091, *writ denied,* 99-0234 (La.3/26/99), 739 So.2d 800.  The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm not yet realized does not suffice to create liability for a delictual action. *Braud v. New England Ins. Co.,* 576 So.2d 466, 468 (La.1991). The damage suffered must at least be actual and appreciable in quality-that is, determinable and not merely speculative. *Harvey v. Dixie Graphics, Inc.,* 593 So.2d 351, 354 (La.1992).

46

In the present case, Luminais has not alleged facts to show negligent representation and she does not allege any actual injury.   The legal discussion below supports the dismissal of her malpractice claim.

### 1.   No Evidence of Over Billing

Luminais does not give any specific examples of how she was overbilled.  Her contract authorizes billing in increments of .25 and for the billing of both Howard and his associate's when they perform tasks together.  A review of Luminais' bills attached to the Complaint indicate that there were only two instances in which the same narratives were entered for both on the same day: on August 16, 2006, both Howard and Miller, his associate, billed for trial preparation which is not the same as "performing the same tasks," and both billed for attending the hearing.  Her contract clearly states that "The use of an associate will be at Mr. Howard's sole discretion. Mr. Howard and Associate both bill for time when they are together.  (See Complaint, P-8, Luminais' Bill).  This allegation of malpractice is frivolous.

In her contract, she agreed to pay Howard $7,500 as an advance fee to secure his general availability and that this fee is not an advance payment for services not yet rendered.  Many clients pay this fee to conflict Howard out of representing their spouses but do not use his services. Nonetheless, the services rendered by Howard and his associate were paid out of this fee with the exception of a balance of $332.50 which Luminais paid in full.  (See Complaint, P-8, Luminais' Bill).  In fact, a review of the bill does not reveal any excessive billing for unnecessary tasks or an inordinate amount of time to perform tasks.  Without any specific allegations or examples of overbilling, her vague and unsupported claim is insufficient to support an allegation of malpractice.

47

### 2.      No Evidence of Unauthorized Work

The only instance cited in the Complaint for alleged unauthorized work performed by Howard is referenced in Paragraph 111, i.e Howard drafted and filed a Petition for Protection from Abuse after Luminais had an altercation with her husband. In that same paragraph, Luminais admits that she agreed to the filing of the petition making her claim specious. Notably, the bill sent to her by Howard documents that on January 18, 2007, Luminais met with Howard's associate for two hours while they discussed the contents of the abuse order. (See Complaint, P-8, Luminais' Bill). On January 19, 2007, Howard's associate spent another hour and a half on the telephone with Luminous discussing the contents of the Abuse Order and a Protective Order. (See Complaint, P-8, Luminais' Bill). For Luminais to now claim that she either did not authorize the filing of the Protective Order is contradicted by the documentary evidence. Furthermore, Luminais does not allege any actual damage she suffered because the Protection Order was filed. This allegation does not support a claim for malpractice.

### 3.      No Evidence that Verification of Divorce Pleading Signed Prematurely

Luminais next contends that Howard committed malpractice by requesting she sign verifications on the day that she paid her fees and signed her contract. (See Complaint, ¶110). She alleges this occurred before pleadings had been drafted or reviewed. A review of her own documentary evidence contradicts her allegations.

Luminais signed her contract and paid Howard a retainer on January 12, 2007. (See Contract, P-7 and Receipt for Retainer, P-10 attached to Complaint). A review of her bill indicates that the petition for Divorce and Order was reviewed on January 12, 2007, during a meeting among her,

48

Howard, and his associate.  (See Complaint, P-8, Luminais' Bill).  The Petition was filed that day.

The bill also indicates that the Petition for Protection from Abuse was reviewed with Luminais on

January 19, 2007, the day it was filed.  (See Complaint, P-8, Luminais' Bill).  It would appear from

the evidence provided by plaintiffs that Luminais reviewed the petitions before they were filed.

Luminais does not state any actual losses she incurred by signing the verifications especially

when she reviewed the Petitions prior to their being filed.  There is no legal requirement that a

Verification even be attached to a Petition.  See La. Code Civ. Proc. art. 863.  And if she had

disagreed with some of the content after it had been filed, Luminais could have filed an Amended

Petition or fire Howard.  She did neither.  Luminais' claims must be dismissed.

### B.    Breach of Contract Claims Have No Merit

Luminais' breach of contract claims mirror her claims of malpractice.  She alleges that

Howard (1) disregarded her wishes by filing a Petition for Abuse and (2) asked her to sign

Verifications prior to drafting all pleadings.   She does not explain how these actions, which are

denied, breached the terms of her contract with Howard.  Without any allegations as to what

provisions of her contract were breached or how she sustained damage as a result of the purported

breach, this claim should be dismissed with prejudice.

### IV.    Plaintiffs Should be Sanctioned

Plaintiffs' claim under RICO and the claims of malpractice and breach of contract are so

meritless and vexatious that this Court should consider imposing sanctions under 28 U.S.C. 1927.

Plaintiffs' attorney has acted in bad faith by characterizing Howard's legal practice as criminal in

public pleadings.  Furthermore, plaintiffs' attorney is aware that St. Germain's claims were litigated previously and are estopped, and that Hillyer's claims are perempted.

The Court has discretion to impose sanctions when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice, pursued a claim that is without a plausible legal or factual basis and lacking in justification, or pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound. *Jolly Group, Ltd. v. Medline Industries, Inc*., 435 F.3d 717, 435 F.3d 717 (7th Cir. 2006). For example, in *Veneziano v. Long Island Pipe Fabrication & Supply Corp.*, 238 F.Supp. 683 (D.N.J. 2002), *aff'd*, 70 Fed.Appx. 506 (3d Cir. 2003), the Court held that a finding of bad faith was appropriate of an attorney who advanced claims that were meritless, that counsel knew or should have known were meritless, and that the motive for filing suit was for an improper purpose such as harassment.  Such a finding of bad faith is required under the present fasts.

Sanctions may be imposed under 28 U.S.C.1927 "only on a showing of the attorney's recklessness or bad faith;" in other words, sanctions are appropriate "when an attorney knowingly or recklessly raises a frivolous argument ... or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas Through Chargualaf v. Winkler,* 792 F.2d 858, 860 (9th Cir.1986) (internal citations omitted). *See Zaldivar v. City of Los Angeles,* 780 F.2d 823, 829-32 (9th Cir.1986) (comparing section 1927 with Fed.R.Civ.P. 11, which does not require bad faith); *Optyl Eyewear Fashion International Corp. v. Style Cos.,* 760 F.2d 1045, 1048 (9th Cir.1985).  Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, *see, e.g., Optyl Eyewear,* 760 F.2d at 1050-51, or argues a meritorious claim for the purpose of harassing an opponent, *see, e.g.,*

50

*Lone Ranger Television, Inc. v. Program Radio Corp.,* 740 F.2d 718, 727 (9th Cir.1984) (citing *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 182 (D.C.Cir.1980) ).  Such is the case here.

All elements for sanctionable behavior are present.  First, it is unequivocal that plaintiffs have advanced claims in their RICO suit **that have absolutely no basis in fact or law**.  As discussed *supra*, plaintiffs were unable to identify a single predicate act or define an enterprise making the RICO claim without any factual or legal support.  Also as discussed *supra*, St. Germain's claims of malpractice and breach of contract are estopped and Hillyer's claims are perempted.  All these claims are frivolous and harassing.

Second, the attorney here knows that St. Germain's claims are estopped.  When she attempted to re-file the same claims in a different court, Howard filed a Motion to Dismiss based upon *res judicata*.  Her attorney admitted to Howard that the suit was not winnable and requested that he be allowed to withdraw the petition.  The Consent Judgment to Withdraw was signed in September of 2007.  Then, just a few months later and as an indication of bad faith, her attorney again filed the same claims based upon the same facts, knowing they are estopped, but in this Court.  Howard must **again** pay for the defense of claims already litigated twice before.

Third, it is apparent that the motive in filing this suit is to embarrass Howard by characterizing his practice as racketeering and accusing him of malpractice.  Another purpose is to force Howard to incur significant defense costs again in apparent retribution for Howard's his filing and winning a Suit on Open Account against St. Germain.  Such abuse of the judicial system to attack an attorney for meritless claims should be sanctioned.

51

## SUMMARY

For whatever reason, St. Germain persists in harassing Howard by filing suit after suit alleging the same facts and the same claims.  In her latest filing, she goes so far as to call him a racketeer while characterizing routine actions such as collecting a retainer and using different letterheads as federal crimes.

St. Germain's vendetta needs to stop here.  There is no merit to any of the RICO claims, Hillyer's state claims are perempted, St. Germain's state claims are perempted and estopped, and Luminais' claims are contradicted by her own exhibits.  Not only should all the claims herein be dismissed with prejudice, but this Court should impose sanctions on St. Germain and her attorney for their vexatious behavior.

Respectfully submitted,


       /s/Joanne Rinardo
NANCY J. MARSHALL T.A. (#8955)
namrshall@dkslaw.com
JOANNE RINARDO (#24201)
jrinardo@dkslaw.com
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine Street
New Orleans, Louisiana  70130-3672
Telephone:  (504) 581-5141
Facsimile:  (504) 566-1201
**Attorneys for Defendants,
D. Douglas Howard, Jr., D. Douglas
Howard, J. & Associates, Howard & Reed,
Attorneys at Law**

52

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a copy of the above and foregoing motion has been served upon, **Mark Edw. Andrews, Esq., Andrews Arts & Sciences Law, LLC,** 7104 Coliseum Street, New Orleans, Louisiana  70118, by electronic means, by fax, by hand, and/or by placing same in the U.S. Mail, postage prepaid and properly addressed, this **1st day of February, 2008.**


        /s/Joanne Rinardo

53